The next case this morning is 523-0091 Carnahan v. Stepping et al. Arguing for the appellant is Douglas Stewart. Arguing for the appellate is Edward McCarthy. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning, sir. Good morning. We'll first hear from the appellant. Are you ready to proceed? I am, Judge. Please state your name for the record and you may proceed. Good morning. My name is Doug Stewart. I'm here for appellate Ms. Stepping and Ms. Aronico in cause number 5-23-0091. This matter revolves around a mistaken boundary line between the two parties, between the appellee and the appellants. The appellee filed an action to quiet title in 2018 against, at the time, Ms. Stepping owned the property, claiming, you know, seeking to quiet title to the disputed boundary line before he ultimately voluntarily dismissed that action in 2019. After that dismissal, Ms. Stepping sold the property to appellant Ms. Aronico. After she acquired title from Ms. Stepping, then the appellee filed a trespass claim, both against Ms. Stepping and Ms. Aronico at the time. This time, the claim was solely trespassed. There was no action to quiet title. Alternatively, Ms. Aronico, the appellant, filed a counterclaim exerting ownership over the parcel per adverse possession. Appellee's claim primarily focused on the installment of two improvements. First off, there was a retaining wall that encroached over his boundary line that was later determined to be installed somewhere between 2006 and 2008. And that was a predecessor to Ms. Stepping that installed that. And then second, Ms. Stepping installed a dog pen in 2018 that just merely crossed the line maybe by a foot or two. I'm not sure how over was the retaining wall. The retaining wall was a few feet. And I don't have an exact number, but we're talking three or five feet where it crossed over the boundary line. And then there was a corner of the driveway that was on the appellant side of the retaining wall that also encroached across that line. And this is evident by surveys performed by appellee at the time and a second survey done by the appellants in 2019. And that those surveys are entered into the record. So it's a mere minor encroachment. The true discrepancy here, judges, is the issue is there's a quadrant line, section 21 quadrant line. And effectively what the parties are disputing is the appellee is saying that the boundary line is the quadrant line itself. What the appellants are stating is that line is actually encroached north a matter of somewhere between eight and 20 feet based on where this mulberry tree is located. The from 1996 when the appellee and forgive me, I'm kind of going off my scripted argument. I'm kind of ad libbing a little bit. That's what oral argument is, isn't it? I don't know. And actually, I enjoy the questions. I prefer those. But when he acquired the property in 1996, up until the 2015 survey, the appellee believed that the mulberry tree was the line from the mulberry tree to that section. 21 stone is where he acted as if he owned everything south of that the appellate in the predecessor zone, everything north of that he own. During that period from 1996 until 2015, there's a series of improvements are done by these predecessors of interest. There's the installation of a retaining wall. The driveway obviously is is rocked and paved to some extent, and that encroaches onto that section of the ground. They park their vehicles on it. At one point, there's a recreational vehicle that's parked on that side of the boundary line. They're installing yard ornaments. Of course, Miss Stepping installs this dog pen that merely crosses this line. There's a light pole. The light pole has a street light that the appellates pay for electricity to have that light activated for, you know, $18 a month or something along those lines. And then we have this debate over who is maintaining the vegetation. And the appellee states that up until the 2015, he covered everything north and the appellants covered everything south. And that included grass cutting, cutting down bushes that were outside of the perimeter of the house. And ultimately, we get to this dispute over who's supposed to cut down this dead tree that is in this disputed track of land. And appellants claim that they maintain that property through that whole course. And it's well and again, it's well beyond just mere grass cutting. It's covering significant improvements. And the case law actually says sometimes with these minor and forgive me, I think it's maybe it's Justice McKinney, like you have a farm outside of town. And a lot of these disputes are farmers are, you know, there's a movement of a fence or a ditch or something along those lines. And we're only talking a mere 10 or 15 feet between the two. And that's similar to what has happened here. But as we go through the testimony, starting it as early as 1992, we've got a history of a discrepancy of that quadrant line and what the possession line is. And appellant surveyor, surveyor Maxwell, he actually detailed going through that survey history through time. And in 1992, you can see that that possession line starts to push up a little bit. And that's where we start to see our discrepancy that is reinforced in a 2000 survey done by Koch because there's a there's a lawsuit in 1995. That's that's adjacent property owners fighting over the same boundary line that they also detailed that that boundary line is now pushed up that possession line, which is significant for us here. So when Mr. Carnahan, the appellee, files his claim in 2020, we've already got history dating back to 1992 that that that possession line is already moved up. The 2015 survey that he did, actually he learned that he owned eight feet below where that mulberry tree was allegedly located. So we get this secondary triangle that is created. And the appellee is obviously trying to claim ownership of that and that's where all these trespasses occurred where the retaining wall is located where the dog pen is located. Again, it's just this small little sliver of a triangle. The trial court where I think the trial court aired is they found that first off, he didn't the 20 year statutory period doesn't begin until he learns that he owns the disputed parcel of land, which of course occurred in 2015. And that goes directly against case law that's long been established dating back to I think the daily cases in 1907 cases says that the knowledge of the title holder, whether he knows that he owns the land or doesn't own the land is inconsequential and it's it's definitely not dispositive to the case. If he had the ability. If the possession was obviously adverse to his interest and open notorious the fact that he didn't do anything to investigate his ownership is effectively on him, and he loses title. The other area where the trial court below messed up is they said because that possession occurred before he knew he had ownership. He effectively gave permission for the appellants to use the land, because he didn't object to them using it during the they said that the lack of knowledge of ownership is not dispositive and then secondly evidence that it's not permissive is the fact that as soon as he learned he had title. He objected to the title and tried to reject them. And I want to draw. There's a Fourth Circuit court case where they, they, they accident that a little bit better. In the fourth district. Yeah, the fourth district had a case under McNeil. And the way that I really liked the way that worded the case law there. In a, in a short, what they, what they state in that case is, you cannot give permission to use land that you don't think you own. And that's effectively what the trial court below said by Mr Carnahan not objecting to miss stepping in Miss Veronica, and the three or four owners of the property before they took title, using that land that affected to him giving permission to use it, even though he didn't believe he owned it and. And again, it's the fourth district applying that Supreme Court precedent precedent that basically says again if you don't know you want it, you're not going to say you, you don't have any authority to give permission for someone to use it. So, and I, and I can again shortcut back a little bit. I think the trial court aired on those two principles of law. First off, the appellate never gave permission. And the fact, whether he gave permission or didn't give permission is only isn't relevant because by that point, he didn't have title of the property, the possession began as early as 1992, and definitely no later than 1996 so by time he brought his action in 2020, he had already lost title and permission is irrelevant at that point. And again, that's based on the principle that the 20 year statute of limitations as codified under the statute begins to run when the encroachment, or the entry on pond land initially occurs and I'm going to again argue that it's occurred prior to 1992. And I ran through that really fast so feel free to slow me down and ask questions. The issue of punitive damages and all that. Well, the fire the finding of adverse possession doesn't the court have to resolve that issue first before it can turn to the trespass issue. Well, if the adverse possession goes in favor of the appellants the award of damages is moot, because there would be no damages for the trespasser and actually the appellants would have the ability to file for damages against the appellee. In terms of assuming that this court doesn't agree that the appellants have established adverse possession the, the award of damages is problematic for two reasons. First off, there's actually no evidence in the record whether or not what those amount of damages are there was an exhibit in the trial binder but that exhibit was never entered into the evidence so it's actually not a part of the total record. Secondly, the award is is excessive in for two reasons. First off, it includes all the legal fees that are associated with the 28 keys that he dismissed and walked away from. It also includes claims against Mr radical the ultimately was unsuccessful on misstepping, and the judges opinion solely rested on whether or not misstepping could the cost of moving the fence by misstepping if it was determined that she didn't own the land. She testified that the person that installed the dog pen which is just one of those chain link fence little squares. He said he would move it if it ultimately was determined that she didn't own the land. But misstepping. During the pendency of the 2018 case had a survey commissioned that refuted the appellees position so therefore she was acting under a claim of right in in claiming that she owned it and refusing to move the fence who effectively again had these competing is far excessive and most of the cases that I looked through were close to a five or $10,000 damage award. And those were even looking at, you know, a cover the attorneys fees but then even looked at the issue and punitive damages to begin with, because again she wasn't trying to be abstinent she just, she had effective boundary survey that said she owned the property. Do you believe the appellees brief concedes that the damages issue was improperly decided. I do believe it does your honor. Yeah, the, he does acknowledge that the damages issues was not brought before the court. Both the nominal and the punitive. Correct your honor. Yeah, neither issue was was either briefed or testimony proffered. And we even had discussions in the record to where we were reserving that for a separate hearing to occur after the fact, once ownership was ultimately determined by the trial court. My understanding is that the, your clients, not only had surveyed but they also went to the St. Clair County mapping department they talked to the supervisor assessments office and talk to the treasurer and had maps printed out showing, at least from the county's of the disputed properties that is that accurate. That is accurate your honor, and I have to concede here that those, those are GIS aerial maps, and those are not necessarily legal legally binding on who are the owners of the property are, but from an aerial view it does depict that. And then, if you look at what the parcels are there's an 18 foot 18 wide foot strip of land. That is this parcel number two for the appellants that that strip of land was actually determined as part of this discrepancy in the boundary lines over the decades. I believe it was Mr. Jones or Mr. Jackson, it was, it was from the time Mr Carnahan acquired the property initially. One of those owners of the stepping property realize that this 18 foot strip of land was available for back taxes because no one knew that no one had owned it. So he went and acquired the title from the county for back taxes, which actually upset the appellee because he didn't know it was available for sale. And I think that's evidence that there was a lot of dispute as to where that boundary line was between where the quadrant line and where that possession line ultimately was. And you can follow under survey or Maxwell that goes all the way down to the far end of that that far stone that boundary line keeps kind of jumping back and forth along the way. I thought one of your clients was paying the property taxes on the disputed property and also had a security light installed or was paying for security light on that property as well. There is a utility light on it and we have evidence from Aaron that they were paying for the street light at the time. And there was titled paperwork that ultimately was objected to that wasn't entered into the record that the predecessor was also paying a light for the light bill on that poll. So I do have utility payments associated with the use of the street lamp at it that goes in favor of the balance in my opinion. And if any more questions before I yield my time judges. I have no other questions. No questions. All right, thank you counsel. We'll now hear from the appellee name for the record and you may proceed. Thank you, sir. My name is Edward McCarthy I'm counsel for the employee. Charles Carnahan, and the. We have to keep in mind, obviously burdens of proof and those kind of details here, but it is clear that my client. Was the owner of this property period. As it's often referred to in the appellate court cases, the title holder. Has the right to eject anyone who is occupying the property without his permission. The, the, the hustle of this case, that is, that has to do with this property. And the other thing that has come up is. This Mr. Maxwell's. Intrusive literally. Appraise our surveys in which he, he moves a. Property line with no decisions. About that old property line having to do with. The history of either my clients. Property or the defendants property. But didn't judge cats find in favor of your client on the property line. Yes, sir. Yes, sir. She did and. She did properly. Because. The surveyors we presented. Located. The boundaries of the property lines. Under the usual meets and bounds description. That had been used. For the entire history of these parcels. There, there is no history whatsoever. Of any of those parcels referring to. An old possession line. That's of no significance. To this case, as a matter of fact. Where are the properties? I'm sorry, where, where are the properties? Is there. St. Clair county and. I forget. Oh, Fallon area, I believe. In the city. Yes, sir. Confused why their meets and bounds within the city. Well, okay. Okay. It's not in the city. I was wrong on that because they are. Township. Properties. In the township. And forgive me. I don't remember what township. They're part of. But because the. The legal description that. Part of the argument that Mr. Maxwell. Was making involved. Actions that were taken. By properties that are not adjacent, but they're close. Who were. The. The. Forming a. Subdivision. For the purposes of having the subdivision rights. And organization. And that had nothing to do with my client's property. Okay. The. As a matter of fact. Mr. Stewart talked about the transfer. From. Miss stepping. To Mr. Even though, and he's claiming that. Mr. Stepping was claiming his property all along. According to the. Description that was found. By determined by Mr. Maxwell. But Mr. Maxwell never. Never wrote a legal description. To describe what these parcels were never gave us a survey of any kind And. Not only that. When she. Miss stepping. Transferred to miss. Miss. After receiving all these reports. From Maxwell. That it's clear. From the opposing council. That's what they were relying on. She. She never referred to. The legal description. In any sense. Of the legal or any of the documentation. Saying that, well, yes, I'm transferring this. My property, which has this legal description. However, this is wrong. The legal description should be X, Y, Z. That's never done. And here they're trying to say that. That the legal description is wrong. That they've owned. That she owned. The property. Even eight feet north of her line. But she never transferred that. When she was. Miss. Miss selling to miss Veronica. So. You know, there's. My client. Was the title holder. And remain the title holder all the way through all of this. Property. Issue. Then. When. When. Miss stepping. Still being the owner put the fence in. It just protruded. Multiple inches, maybe a foot. For a distance of 20 feet. And she was told. On to my client's property. That he. That was. And that's in the surveys. That's before the court. And she was told. By the man. By the. Chap who put in that fence. Shoot. If you have to, if you want to move it. I'll move it. No charge. She had an opportunity. To move that fence. A foot back onto her own property. And not have this lawsuit file. This nothing would have happened here. So this was triggered by the dog bin. Yes, sir. Yes, sir. Okay. The retaining wall or the other issues. Well, the retaining wall. No, the retaining wall was. Added. Just because it. It did intrude. And I wanted to take a shot at that, but the court was right. Before you say. Okay. Cool. And anything else? I do want. Quickly address the damages. You do concede the damage issue that it should go back for hearing on damages. Yes, sir. We agreed that we would have a hearing on damages. All three. The council and the judge. In a meeting. Right before we wrote all our stuff up. We agreed that we would have a hearing on damages. Yes, sir. And so it came as a surprise to you when you had a judgment. You received that included the damages. Well, Frankly. I must have. Forgotten. That we agreed on that because I wouldn't have put it in my. Final argument. If I had remembered that it was going to be decided later. So that was. No, I was, I was certainly pleased with the judgment. And, but. When it was pointed out by opposing counseling in this. Appeal. I just do have to concede that. Yeah. Oh, we did agree to that. Okay. And that was. Incorrect step. To take in this case. Okay. Thank you. Okay. I really don't have. Anything else. You know, basically. My client was a title holder. No. Nothing. He was a title holder. Until they put this little. Pen. Dog pen. On his property. Nobody took any steps. To. Keep him out to, to take. You know, aggressive. Actions. To. Claim the property away from him. And so. I think that's a large part of the. Rationale of the court. As he was a title holder. He was always a title holder. And he had a right. To bring this action. And this. And. Dispute is about what. What eight inches on one end and a foot and a half on the other. If that fence would have been moved. We wouldn't have filed a suit. Okay. How do you explain the retaining wall that was placed on the property in 2008? How do I explain that? That was. The retaining wall. The retaining wall is only on. The. Property. By a few inches. There's a picture of it. In. We had taken. That shows that essentially the middle of the retaining wall. The middle of the retaining wall. Which is a brick with. Kind of thing. Is about. What intruded. Into the property. Retaining wall is not all the way along across the property line. The edge of the final edge of the retaining wall. Intrudes. My client. Did not know. For sure that that intruded on his property. Until the survey. So that, that was a. That was. Done by a previous owner. Not by misstepping. Thank you. Any other questions counts. No, I did want to make note. Our clerk, Mr flood indicated that Mr McCarthy tomorrow will be celebrating 50 years of practice in law. I just want to congratulate him on that. Oh, thank you, sir. Yeah. It's been an adventure. I told him this, this feels like kindergarten after being before this court. So many times through the years to be doing it, Like, Completely differently. Well, next month, we're going back to live court. Oh, we have our construction complete. Well, very good. I look forward to that. Although I don't have anything pending. Well, I remember when we started. Practice that we started out with legal size documents. And we've been a lot of changes, carbon paper. Writers back then. And. There's a whole different matter to write a brief. Before fax machines before. Oh, Lord. Any other questions, justice McCain. No questions. Mr McCarthy congrats. I didn't know about your anniversary. That's super cool. Thank you. It's been a pleasure to have you on the other side of this. I want to, there's a couple of points that Mr. McCarthy hits on. And I want to draw the justice. Attention to it's Roller versus Logan landfill. It's a 74th case. Again, it's out of the fourth district. And that case kind of focuses on the concept of continuous and. Uninterrupted use. Of landfills. As under an adverse possession claim. The appellee again. Up until that 2015 survey, we've got 19 years of history of him thinking that line is, is eight to 10 feet North of where it is under the 2015 survey. Let me ask you about that for a second before you get too deep into that. Yeah. My understanding. Some of the testimony was that when it came time to mow the yard. They just kind of took turns. Whoever motor first mode, a little extra to get on the other side. Does that interrupt the possession? I don't think it does judge it. And for a couple of reasons, first off, we don't have clear testimony on when that who's fighting over who's mowing the grass happened. Did that occur after the 20 year statue?   I don't know if it was after the 20 year statue elapsed. Was it him in, was it Mr. Carnahan and misstepping and misstepping son. Did most of the yard mowing based on the testimony. Was this after title had already shipped. So effectively he's trespassing by mowing. The Carnegie are the, the stepping property at this point. I think that title shifted in 2012, not in 2015 or 2020 when the judge entered her order. But the way the case law reads is effectively the interruption has to be enough that it changes the mind of the, of the possessor. So did Mr. Carnahan mowing the grass from time to time shift the mindset of misstepping that she didn't know on the ground. And I'm going to argue, no, based on her testimony, they, she continued to mow the grass as if it was hers the whole time. And then there's obviously conversation on during certain periods of time where he didn't mow that grass at all. And all the other neighbors were kind of just more on where they thought the line was with no objection from Mr. Carnahan during, during the sequence. Your position that just cats is finding on the property line is against the manifest way to the evidence. Absolutely. I do your honor. Yeah. And especially the judge Katz's opinion does not only takes into account the grass cutting. She doesn't factor in a and Mr. Maxwell does a great history of, of the boundary lines. I think he, of the three surveyors that testified, he was the most detailed surveyor to explain what this history of the parcel was. But what judge cats didn't get into is she just disregarded the retaining wall saying it was outside the five-year statute of limitations for trespass. I don't think she factored that retaining wall into the possession of the property by stepping in her predecessors and interest. And then again, we go into, we have retaining wall, we have driveway, we have parking vehicles on it. We have recreational vehicles. We're cutting down trees. We're trimming bushes. We're cutting grass. All this over a sequence of effectively 25 years. And we're judge cats effectively said, well, he started mowing grass in the last five years. So no harm, no foul. And that's not the way the adverse possessive doctrine runs. Once you lose title title is lost. And the fact that he started mowing the grass in 2015, when he realized that that was now his property, I think he, at that point, he was already, he was already SOL. What do you think is the import of the retaining wall? Is that a primary factor or just one of many? I think it's one of many, but I think it's significant because I consider that to be a permanent improvement. I mean, it's one thing to cut grass, right? Like I, I mean, you, we all cut grass and every once in a while you might go a stripper or too far, but a retaining wall is a permanent improvement. When you put that in, you're expecting that to be there for probably 25 years, depending on whether it's stone or, or wood, obviously. So I put a lot of credence into, they made a permanent improvement to that land. And then additionally, and I appreciate I'm almost out of time. If you, if you correlate where the house for miss stepping in, the Serrano coast property is in relation to that boundary line, you creep this absurdity that they effectively built the house on the boundary line. And that would have violated setbacks and everything else that would have been in place at the time the house was built. And you had asked where it's located is located in the city of Fairview, but it's also located in Caseyville township. And the fact that it's in the township doesn't negate the instance that it's located in the city of fair. And any final questions before I yield? I'm sorry. What do you think the strongest part of your argument is, is it that his, his lack of knowledge that it was his property. It's contrary to judge Katz's finding that she found that that was a factor that. I think his favor, you say the case law is opposite of that. Is that, is that the gist? I think it's opposite of that justice fine. I do think that his knowledge one way or the other has no bearing, whether or not the appellants established adverse possession, the fact that they have, that we have history again, dating back to 1992, that there was a possession established, a possession line established that, that Mr Carnahan effectively validates during his testimony, because he stated as soon as he bought the property, he started challenging where the line was. And then that line continued. He just thought that line was north than where it was determined in 2015. So at minimum, I think there's two parcels here that we're fighting over. There's the initial eight feet that goes to the mulberry tree that I think he lost no matter what. And then there's that portion above that mulberry tree that we can argue. Maybe he maintained that by cutting the grass like he did, but because all the main improvements happened below that mulberry tree. Any other questions, justice Vaughn or the questions. Thank you. Justice McCain. Nothing further. Thank you. Thank you. Thank you counsel. The court will take the matter under advisement and issue its decision in due course. Thank you, justice. Pleasure.